IN THE SUPERIOR COURT FOR KITSAP COUNTY
STATE OF WASHINGTON

MARK HOFFMAN and PATRICIA HOFFMAN, a marital community,

Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, and WEST SOUND PROPERTY MANAGEMENT, LLC dba WINDERMERE PROPERTY MANAGEMENT/WEST SOUND, a Washington limited liability company,

Defendants.

NO. 15-2-01226-8

**AMENDED COMPLAINT FOR DAMAGES**

## I. PARTIES

1.1 Plaintiffs Mark and Patricia Hoffman are a married couple residing in King County, Washington. They are the owners of the real property located at 26117 Bond Road NE, Kingston, Kitsap County, Washington 98346 (the "Property").

1.2 Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign corporation that conducts business in Kitsap County, Washington.

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

1.3 Defendant West Sound Property Management, LLC dba Windermere West Sound ("Windermere") is a Washington limited liability company that conducts business in Kitsap County, Washington.

## II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the parties and the subject matter of this action pursuant to RCW 2.08.010.

2.2 Venue is proper before this Court pursuant to RCW 48.05.220 and 4.12.025.

2.3 Plaintiffs have complied with RCW 48.30.015(8).

## III. FACTS

3.1 Plaintiffs resided at the Property from 1999 to 2012. In September 2012, they hired Windermere to lease the Property for them in exchange for a percentage of the rental income. A copy of Plaintiffs' Property Management Agreement with Windermere is attached as **Appendix A.**

3.2 Windermere's website promises "worry-free, full service management," to its customers, including annual inspections and quarterly drive-by inspection reports. It also represents that "[t]o protect your investment and ensure your property will be well maintained," it will obtain "credit and criminal records, rental or ownership history and personal references," as well as employment history, prior to accepting a tenant. Plaintiffs relied on these representations when they selected Windermere to manage the Property.

3.3 Pursuant to a rental agreement dated October 23, 2012, Windermere leased the property to Joshua Parmelee and Bre'Ann Simms ("Tenants"). Prior to entering the rental agreement, Windermere agent Bobbi Neal represented to the Hoffmans that the Tenants had some "slight credit issues that are keeping their score just a hair to [sic] low" to qualify for a mortgage. On October 24, the day after the Tenants signed the rental agreement, a company

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

called Alliance 2020 generated a Background Screening Report at Windermere's request. That Background Screening Report included a credit summary showing that Bre'Ann Simms had fifteen different accounts sent for collection (the majority of which were still unpaid), and a credit score of 498. Joshua Parmelee also had an account sent for collection. His credit score was 663. Windermere did not share the Background Screening Report with the Hoffmans, nor did it ever provide the Hoffmans with any additional information about the Tenants' credit history or amend Ms. Neal's characterization of the Tenants' "slight credit issues." Had Plaintiffs seen the Alliance 2020 Background Screening Report, they would not have agreed to lease the Property to Tenants.

3.4 Tenants also had criminal histories prior and subsequent to October 2012. This information was available for free on the internet. Windermere did not inform Plaintiffs of the tenants' criminal history. Had Plaintiffs known this information, they would not have agreed to lease their home to Tenants.

3.5 In the spring of 2014, Tenants failed to make the required rental payments. In May 2014, Ms. Neal informed Plaintiffs that Tenants had vacated the Property, that the locks had been changed, and that the Property was unusually dirty.

3.6 Plaintiffs immediately went to the Property and they discovered that the yard was full of debris, including a burned mattress and a five-gallon bucket of chemical waste. The pump house and basketball hoop had been destroyed. A large cedar tree had been burned, and the fire pit had plainly been used to dispose of toxic trash. The interior of the home was also filthy and damaged, including poorly-repaired holes in the drywall. A small room within the garage had been constructed, serviced by amateur electrical wiring, and a peephole had been drilled in the garage door.

3.7 The Property had a toxic, smoky smell inside the house and the attached garage.

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Plaintiffs suspected that illegal drugs had been manufactured at the Property. Plaintiffs contacted the Kitsap County Sheriff and Health District, and also reported the loss to State Farm. At the time, the Property was insured under a Rental Dwelling Policy, Policy No. 98-BU-T764-2, effective 11/1/13 to 11/1/14.

3.8   State Farm sent its adjuster, Cynthia Melena, to the Property on May 28th. Ms. Melena told Plaintiffs that the Property didn't look all that bad. and discouraged them from reporting all items of damage in their claim to State Farm, because State Farm would drop their coverage. State Farm told Plaintiffs it would pay $5,126.52 for cleaning the home, and no more.

3.9   Subsequently, testing revealed high levels of methamphetamine residue at the Property. On July 14, the Kitsap County Health District ordered that the Property not be occupied and that Plaintiffs engage a decontamination contractor to clean up the property within 45 days.

3.10   Without conducting any testing or investigation, State Farm denied coverage for the costs of the decontamination required by the Health District and for the damage caused by the methamphetamine residue. State Farm reversed its position after Plaintiffs hired counsel, who pointed out that the denial was contrary to settled Washington law.

3.11   Even after acknowledging that the loss was covered, State Farm agreed to pay only for a partial cleaning and repair. It refused to pay the cost of fully eradicating methamphetamine from the home by replacing all drywall.

3.12   State Farm demanded an appraisal to determine whether it was required to pay for the drywall replacement. Plaintiffs complied and participated in the appraisal process. On April 29, 2014, the appraisers ordered State Farm to provide coverage for replacing the drywall, plus 12 months of lost rents and certain testing and inspection costs.

3.13   The value of the Property has been permanently diminished.

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

3.14 Plaintiffs have complied with all policy terms and conditions.

3.15 State Farm wrongfully denied coverage for Plaintiffs' losses and wrongfully refused to pay for a complete repair of the Property.

3.16 State Farm acted in bad faith by, inter alia,

a. Failing to promptly and appropriately investigate the loss;

b. Misrepresenting policy provisions and availability of coverage;

c. Refusing to pay Plaintiffs' claim without conducting a reasonable investigation;

d. Compelling Plaintiffs to submit to appraisal to recover amounts due under the policy by offering substantially less than the amounts ultimately recovered in the appraisal; and

e. Failing to make a good faith effort to settle Plaintiffs' claim before demanding appraisal.

3.17 State Farm violated RCW 48.30.010; WAC 284-30-330(1), (3), (4), (7), and (18); and WAC 284-30-370.

3.18 Windermere breached its contractual obligations to Plaintiffs under the Property Management Agreement, by, among other things, entering into a rental agreement with Tenants before receiving the results of their background checks.

3.19 Windermere also failed to comply with the representations on its website regarding, among other things, screening of tenants and ensuring that the Property would be well-maintained.

3.20 Windermere intentionally or negligently misrepresented the Tenants' credit history to Plaintiffs and failed to disclose the results of the Tenants' background checks to Plaintiffs. This information was material to Plaintiffs. Plaintiffs justifiably relied on

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

Windermere's representations and would not have agreed to rent the Property to Tenants had they known the information contained in Tenants' background checks and other records available to Windermere.

## IV. CAUSES OF ACTION

### A. State Farm

4.1 State Farm's conduct constitutes a breach of contract, bad faith, violation of the Insurance Fair Conduct Act, and violation of the Consumer Protection Act.

### B. Windermere

4.2 Windermere's conduct constitutes intentional or negligent misrepresentation, breach of contract, and violation of the Consumer Protection Act.

## V. RELIEF REQUESTED

Plaintiffs ask the Court to enter judgment against State Farm and Windermere as follows:

1. Award Plaintiffs the full benefit of the State Farm Policy and all of their damages due to State Farm's breaches of the policy and wrongful conduct;

2. Award Plaintiffs their costs and attorneys' fees incurred in obtaining the full benefit of the policy under *Olympic Steamship v. Centennial Ins. Co.*, 117 Wn.2d 37 (1991).

3. Award Plaintiffs all damages resulting from Windermere's misrepresentations regarding Tenants' credit histories;

4. Award Plaintiffs all damages resulting from Windermere's breach of the Property Management Agreement;

5. Award Plaintiffs their costs and attorneys' fees incurred under the Consumer Protection Act;

6. Award Plaintiffs their costs and attorneys' fees under the Insurance Fair Conduct Act;

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

7. Award Plaintiffs treble damages under the Insurance Fair Conduct Act and/or the Consumer Protection Act;

8. Award Plaintiffs pre-judgment interest on the amount of insurance benefits awarded; and

9. Grant to Plaintiffs such other relief as may be just, legal, and proper.

DATED: December 16, 2015.

MILLS MEYERS SWARTLING P.S.
Attorneys for Plaintiffs

By: ______________________
Bruce A. Winchell
WSBA No. 14582
Janna J. Annest
WSBA No. 34378

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

**DECLARATION OF SERVICE**

I declare that I am an employee of Mills Meyers Swartling P.S., am over the age of eighteen and am competent to testify to the matters stated herein. On this date I caused to be served a true and correct copy of the within and foregoing document on the following, in the manner indicated:

*Counsel for Defendant West Sound Property Management, LLC dba Windermere Property Management/West Sound:*

Philip T. Mattern
Demco Law Firm, P.S.
5224 Wilson Ave S., Suite 200
Seattle, WA 98118

☐ Via first class mail, postage prepaid
☐ Via facsimile 206-203-6001
☐ Via Legal Messengers
☒ Email:
pmattern@demcolaw.com
agilliam@demcolaw.com

*Counsel for Defendant State Farm and Casualty Company*

Michael S. Rogers
Reed McClure
1215 Fourth Avenue, Suite 1700
Seattle, WA 98161-1087

☐ Via first class mail, postage prepaid
☐ Via facsimile 206-223-0152
☐ Via Legal Messengers
☒ Email:
mrogers@rmlaw.com
kmcbride@rmlaw.com

I declare, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

DATED: December 16, 2015.

Kendra Brown

LAW OFFICES OF
MILLS MEYERS SWARTLING P.S.
1000 SECOND AVENUE, 30TH FLOOR
SEATTLE, WASHINGTON 98104-1064
TELEPHONE (206) 382-1000
FACSIMILE (206) 386-7343

# APPENDIX A

Windermere Property Management / West Sound
9939 Mickelberry Rd NW
Silverdale, WA 98383
(360) 692-6102

# RESIDENTIAL PROPERTY MANAGMENT AGREEMENT

IN CONSIDERATION OF THE COVENANTS, TERMS, AND CONDITION HEREIN CONTAINED, Mark E. and Patricia S. Hoffman (HEREINAFTER CALLED "Owner") and Windermere Property Management/West Sound (hereinafter called "Agent") agree as follows:

1. The Owner hereby employs the Agent exclusively to rent, lease, operate, and manage the Property commonly known as:
26117 Bond Road NE Kingston , Kitsap County, WA 98346 .

   Legal Description: ( ) as attached (X) as follows:
   Tax #
   29270230742005 LOT A

   Upon the terms hereinafter set forth for the period of 1 years beginning on the 13th day of September 2012 and ending on the 30th day of September 2013 and thereafter for annual periods. Either party may terminate this agreement upon sixty (60) days of written notice after the expiration of six (6) months of the original term.

2. **The Agent accepts the employment and agrees:**

   a. To use diligence in the management of the premises for the period and upon the terms herein provided, and agrees to furnish the service of its organization for the renting, leasing, operating, and managing of the hereto described premises.

   b. To render a monthly statement of receipts, expenses, and charges, and to remit to Owner receipts less disbursements. In the event the disbursements shall be in excess of the rents collected by the Agent, the Owner herby agrees to pay such excess promptly upon demand of the Agent.

   c. To deposit all receipts collected for Owner (less any sums properly deducted or otherwise provided herein) in a Trust Account at AmericanWest Bank, separate from Agent's personal account. Agent will not be held liable in the event of bankruptcy or failure of a depository.

   d. To review and screen all tenant's credit history, employment history, and references.

3. **The Owner hereby gives to the Agent the following authority and powers:**

   a. To sign, renew and/or cancel agreements or leases for the premises or any part thereof; to terminate tenancies and to sign and serve in the name of the Owner such notices as are appropriate; to institute and prosecute action to evict tenants and to recover possession of said premises; to sue for in the name of the Owner and to recover rents and other sums due; and when expedient to settle, compromise, and release such actions of suits or reinstate such tenancies.

   b. To make or cause to be made and supervise repairs and alteration, and to do decoration on said premises; to Purchase supplies and pay bills thereof. The Agent agrees to secure prior approval of the Owner on all expenditures in excess of $250 for any one item except in the opinion of the Agent such repairs as necessary to protect the property from damage or to maintain services to the tenants as called for in Chapter 59.18 RCW. (Residential Landlord-Tenant Act.) Windermere Property Management shall be entitled to place lien against the Real Property covered by this agreement, within three (3) months of having work done in order to protect its right to reimbursement for expenditure which it has been made under the terms of this agreement. Such lien would be filed only in the event that other satisfactory arrangements for

reimbursement of these expenditures are not made. In addition to such lien right, Windermere Property Management shall be entitled to deduct from any and all rental amounts received such funds as it has advances. Such liens may be foreclosed as a mortgage is foreclosed.

c. To hire, discharge, and supervise all labor and employees whom shall be independent contractors for the operation and maintenance of the premises. Agent shall not be responsible for the acts, default, or negligence if reasonable care has been exercised in their appointment and retention. It is acknowledged that Windermere Property Management uses only licensed, bonded, and insured contractors in the maintenance of your property.

I acknowledge, understand and require that you use only licensed, bonded contractors in all cases of routine maintenance and repair on my property. I understand that I will be notified if individual costs exceed my Emergency repair limit.

d. To make contacts for electricity, gas, fuel, water, rubbish hauling and other services or such of them as the Agent shall deem necessary; the Owner to assume the obligation of any contract so entered into at the termination of this agreement.

e. To maintain an operation balance of not less than $250 to insure against lack of funds in the emergency situations. There are special cases in which communication may be difficult with out-of-area owners. To alleviate any unnecessary delay in completing repairs, it is requested that you authorize emergency repairs to a maximum limit of $250. Initials: ______ (This must be filled in and initialed by the landlord).

4. **The Owner further agrees:**

a. To hold the Agent harmless from all damage suits and costs incurred there from in connection with the management of the premises and from liability from injuries suffered by any employees or other persons whomsoever and to carry, at the Owner's expense, necessary liability and compensation insurance adequate to protect the interest of all parties hereto, which policies shall be so written as to protect the Agent in the same manner and to the same extent as the Owner. The Owner further agrees that a minimum liability limit of $500,000 shall be considered adequate and a copy of all insurance policies will be furnished to the Agent.

b. The Agent shall not be responsible or liable for the failure of any tenant to pay rent or perform any other covenant agreement constituting a breach or any lease or agreement of tenancy.

c. To pay Agent as compensation for services, ten (10) percent of proceeds from gross rents and receipts paid by tenant, including late fees and forfeited deposits. This amount is due and payable monthly, and shall be deducted by Agent from receipts. Any fees collected for NSF (Non Sufficient Funds) checks will be held by agent as compensation for damages and expenses incurred.

d. To pay one-half of one month's rent or $300, whichever is greater, as compensation for obtaining a tenant. A rental commission of one-half of one month's rent is to be paid for each subsequent tenant.

5. **Other Items of Mutual Agreement:**

a. Agent agrees he will not collect or charge any disclosed fees, rebates, or discounts, and if any should be received by Agent these will be credited to the account of the Owner.

b. Any rental agreement or lease executed for the Owner by the Agent shall not exceed one year except by Owner's prior approval.



c. Unless notified in writing by Owner to the contrary, all statements, correspondents, notices, etc. shall be forwarded to Owner at:

844 NE Northgate Way
Seattle WA 98125

Phone: (360) 731-8627 Home
(206) 367-2162 Work
( ) Fax
Email

Owner check to:
☒ Owner (at above address) ☐ Bank ☐ Other

Bank Name:

Address:

City, State, Zip:

Acct. No.:

6. Owner authorized Agent to rent premises under the following terms:

| | |
|---|---|
| Monthly Rent Amount | $ 1,700.00 |
| Deposits (Refundable) | |
| Security, Damage, & Good Faith Deposits | $ 1,700.00 |
| Cleaning Deposit | $ |
| Pet Cleaning $ Damage Deposit | $ 250.00 per pet /owners approval |
| Other | $ |
| Other | $ |

It is agreed that no deduction of monthly rent below a minimum of $ 50.00 and security, damage, and cleaning deposit below a minimum of $ 50.00 shall be made without the Owner's written consent.

7. Utility providers and account numbers are as follows (if applicable)

| | |
|---|---|
| Power: Puget Sound Energy | Acct# |
| Water: N/A | Acct# |
| Sewer: N/A | Acct# |
| Gas/Propane: Owner | Acct# |
| Garbage: Waste Management | Acct# |

Windermere PROPERTY MANAGEMENT

    a. Owner agrees to pay the following Utilities: none included.

b. Remarks concerning Utilities: ______.

8. The Owner understands that a "MILITARY CLAUSE" must be incorporated within any rental agreement with Military Personnel as required by law. The law stipulates that any member of the Armed Forces receiving permanent change of duty station further then 30 miles away from the residence must be releases from any lease or rental agreement without penalty...

9. The owner understands that a Lead Paint Disclosure Form must be incorporated within any renal agreement with real property built before 1978. The law stipulates that this must be done with every rental agreement to ensure that prospective tenant(s) are aware that the home may contain lead paint.

10. Additional provisions of this agreement:

______

The Owner acknowledges awareness of the Washington Residential Landlord-Tenant Act (RCW 59.18 ET SEQ.) The Washington Administrative Code (WAC), Title VIII of the Civil Rights Act of 1968, and all Sate, Federal, and Local Fair Housing Laws, and agrees to abide by same, understanding that the Agent must act according to these Laws and Statutes or any revisions or modifications thereof.

The Owner acknowledges and received a copy of the "PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME" and Washington Residential Landlord-Tenant Act."

This agreement shall be binding upon successors and assigns of the Agent, and the heirs, administrators, executors, successors and assigns of the Owner.

IN WITNESS HEREOF, the parties have affixed or caused to be affixed their respective signatures this 13th day of September 13, 2012.

OWNER: Mark Hoffman Social Security # 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

Signature: [signature] Phone Number: 360 204-1691

OWNER: Patricia Hoffman Social Security # 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

Signature: [signature] Phone Number: 360 731-8627

BY: Bobbin Noel 9/13/12
Agent

BY: ______
Broker

WINDERMERE PROPERTY MANAGEMENT/WEST SOUND

Windermere PROPERTY MANAGEMENT